## Harris *versus* McElroy.

*Construction of deed.— Creation of estates for life and in tail.— Convey-
ance of legal estate by trustee to cestui que trust, when refused in equity.*

1. Where a married woman joined with her husband in conveying her real
estate by deed to a trustee in trust for her use during life, at her death in
trust for her husband during life, and upon the death of the survivor for the
use, benefit, and behoof of such of her children as should then be living, and
the issue of those deceased, their heirs and assigns in equal shares as tenants
in common, and in case of her death without leaving any child or children,
then in trust for her right heirs: *Held*, that she took a life estate only, and
not a fee tail, and that her children took a contingent interest capable of sale,
assignment, or devise.

2. Therefore, when after a divorce between herself and husband, there was
a sheriff's sale of his interest and a purchase by her, it was *held* she could
not, on bill filed, compel a conveyance of the fee to her from her trustee,
either upon the ground that her estate is a fee tail, or upon the supposition
that no legal estate in the two life estates remained in the trustee, that she
could destroy the interests of her children and grandchildren in remainder.

APPEAL from the Common Pleas of *Philadelphia.*

This was a bill in equity, filed July 4th, in the Common Pleas,
by Caroline D. Harris against Thomas E. McElroy, her trustee,
to compel a conveyance to her of the legal estate held by him.

The bill set forth, that by the will of Catharine Hollinshead,
dated July 4th 1807, complainant became entitled to one undi-
vided fifth part of all the real estate of which the testatrix died
seised.

That, by indenture dated May 9th 1843, recorded in Deed
Book R. L. Ll. No. 22, p. 668, complainant and her then hus-
band, J. Walter Harris, granted and conveyed all her estate,
property, and interest in said real estate to John W. Harris, in
fee in trust, to permit complainant to let and demise the same,
and receive and take the rents and income during her life for
her own separate use and support; and immediately after her
death, in trust for the said J. Walter Harris during his life, and
no longer; and after the decease of the survivor of them, in
trust for the only proper use, benefit, and behoof of such of
complainant's children as should then be living at the time of
her decease, and the issue of such children as may then be dead,
leaving lawful issue. A copy of said deed was annexed to the
bill, and made part thereof.

That by a decree of the said Court of Common Pleas, Decem-
ber 17th 1853, complainant was divorced *a vinculo matrimonii*
from the said J. Walter Harris.

That, on the 23d of February 1861, W. H. Kern, Esq., sheriff
of Philadelphia, by deed-poll of that date, duly acknowledged
and recorded, granted and conveyed to Robert Wescott in fee
all the estate, right, title, and interest of said J. Walter Harris

and John W. Harris, of and in certain real estate therein de scribed, being the same real estate mentioned in said deed of trust.

That, on the 22d of June 1861, said Robert Wescott and wife, by indenture of that date duly recorded, granted and conveyed to complainant in fee, all the right, title, and interest in said real estate vested in said Robert by said deed-poll.

That, on the 21st of December 1861, the said Court of Common Pleas, upon petition of complainant, dismissed said John W. Harris as trustee, and appointed Thomas E. McElroy, the respondent, trustee in his place, who has given the required security.

That the purposes of said trust have been fully accomplished and fulfilled, and complainant is entitled to have the legal title of said real estate conveyed to herself, but the respondent refuses to convey the same.

And praying for a decree that upon payment and satisfaction of all reasonable costs and charges of said trustee in and about the execution of said trust and of the decree prayed for, the respondent convey to complainant in fee said real estate; and for general relief, &c.

The respondent's answer admitted all the facts alleged in the bill, but denied that he has refused to convey; " but as there may be some doubts whether the purposes of said trust have been fully accomplished and fulfilled, and whether the complainant is entitled to have the legal title conveyed to herself, he is desirous to act in the premises as trustee under the direction of the court, and is ready and willing to make such conveyance as the court shall decree, having all just and reasonable costs and charges paid and satisfied."

The undisputed facts of the case were these:—

The complainant, as one of the grandchildren of Catharine Hollinshead, deceased, was entitled, under her will, to an undivided one-fifth interest in certain real and personal estate. The personal estate, prior to the filing of the present bill, had been sold, and the proceeds applied to the improvement of a portion of the realty. On the 8th of October 1838, complainant, then a widow with three children by a former husband, was married to J. Walter Harris; and on the 9th of May 1843, joined with her said husband in the execution of the deed of trust referred to in the bill.

This deed was between J. Walter Harris and Caroline D., his wife, of the first part, and John W. Harris of the second part; and after reciting that said Caroline, as one of the heirs at law or devisees of Catharine Hollinshead, was lawfully seised *inter alia* of certain real estate and certain shares of bank stock: " Witnesseth, That said parties of the first part, in consideration

[Harris *v.* McElroy.]

of one dollar, and for settling and assuring said bank stock and real estate upon such uses and upon such trusts as are thereinafter declared of and concerning the same," grant and convey unto said party of the second part in fee, " all the estate, property, interest, claim, and demand of said Caroline, in and to the real estate of the late Catharine Hollinshead, deceased, wheresoever situate and lying," and in said personal estate. *Habendum* upon trust that "said John W. Harris, his heirs and assigns, shall and will, from time to time, permit and suffer her, the said Caroline D. Harris, to let and demise said real estate, or any part thereof, and receive and take the rents and income thereof, and the dividends upon said bank stock, during all the term of her natural life, for her own separate use and support, and so as the same shall not be in anywise in the power or liable to the debts, control, or engagements of her present or any future husband; she paying all taxes and repairs." Her receipts, in her own name, or the receipts of such person or persons as she may authorize, notwithstanding any coverture, to be valid. " And from and immediately after the decease of the said Caroline D., in the event of her said husband surviving her, then in trust for the only proper use, benefit, and behoof of the said J. Walter Harris, during all the term of his natural life, and no longer. And from and immediately after the decease of the survivor of them, the said J. Walter and Caroline D., then in trust to and for the only proper use, benefit, and behoof of such of the children of the said Caroline D. Harris as shall then be living at the time of her decease, and the issue of such children as may then be deceased, their heirs and assigns for ever, in equal shares as tenants in common, so always, however, that such issue of deceased children, if any, shall take equally among them, such part and share only as his, her, or their deceased parent or parents would have taken if living. And in case said Caroline D. Harris shall depart this life without leaving her surviving a child or children, or the issue of a deceased child or children, then in trust for the only proper use and behoof of the right heirs of said Caroline D. Harris, and to and for no other use, intent, and purpose whatsoever." The trustee and his heirs were empowered " to unite in and effect any partition or partitions, sale or sales, of the said real estate, which is now undivided, and for these and any or either of these purposes, to use and adopt all lawful ways, means, and acts which he may deem fitting and proper, with the consent and approbation of the said Caroline, or the survivor of them, the said J. Walter and Caroline, testified in writing for that purpose, and not otherwise ; or the said estate or any part or parts thereof, with the other parties interested in the same, the share or shares, allotment or allotments, of the said Caroline, of and in the same and each and every part there-

[Harris *v.* McElroy.]

of, to sell and convey in fee simple or in mortgage, or for any less estate. And the moneys arising from such sale or sales, to be invested in other real estate, mortgage, or other securities, under and by the direction of the Court of Common Pleas of said county, or such other court as may have jurisdiction of trusts at the time when such sale or sales may be made, subject to the like and same uses and trusts, and under the same provisoes, conditions, and limitations as are hereinbefore declared of and concerning the premises hereby granted, anything hereinbefore contained to the contrary thereof in anywise notwithstanding."

This deed was acknowledged the same day, and recorded September 21st 1844. At the time of the execution of this deed, complainant had six children living: three by a former husband, and three by Mr. Harris: two others were born subsequently. There are no issue of any deceased child or children, nor had she any other children.

Upon a libel filed by complainant, alleging cruel and barbarous treatment, the Court of Common Pleas, upon the testimony, entered a decree, December 17th 1853, divorcing her *a vinculo matrimonii* from said J. Walter Harris.

All the right, title, and interest of said J. Walter Harris and John W. Harris in said real estate was, in 1861, levied upon and sold by the sheriff, who, February 23d 1861, duly executed, acknowledged, and delivered a deed therefor to Robert Wescott, who, with his wife, by indenture dated June 22d 1861, duly executed and acknowledged, granted and conveyed said interest to said Caroline D. Harris, the complainant, in fee.

On the 21st of December 1861, the Court of Common Pleas of Philadelphia, upon petition, dismissed John W. Harris, as trustee, and appointed Thomas E. McElroy trustee in his place.

Since the bill was filed, the share of the complainant in the real estate has been set aside to her and her trustee in severalty, in an action of partition. It is a valuable lot of land, in the city of Philadelphia, but unimproved and almost utterly unproductive, yielding a small revenue as a brick-yard. The use for this purpose has diminished its value for improvement, as the clay is nearly exhausted.

The complainant has five daughters living, children by the said J. Walter Harris, all of them unmarried, and three of them minors. She has one son living by a former husband, and two grandchilden, minors, the issue of a daughter deceased, who was also the child of the said former husband. Another son by said former husband died, January 28th 1862, intestate, unmarried, and without issue. This real estate is all the property she has.

The Court of Common Pleas (THOMPSON, P. J.), on hearing

[Harris *v.* McElroy.]

the case, dismissed the bill, on the ground that complainant had only a life estate in the property; which was the error assigned.

The case was submitted to this court on the paper-book of the complainant, and without further argument.

*Samuel C. Perkins* and *Samuel H. Perkins* were counsel for the appellant.

The opinion of the court was delivered, July 1st 1863, by

READ, J.—At the time of the execution of the deed of trust, Mrs. Harris, the appellant, had six children living—three by a former husband, and three by Mr. Harris, and two others were subsequently born. These last five are living, and females, all of them unmarried, and three of them minors. Of the three children by the first husband, one, a son, is living, and two are dead, one of whom, a daughter, has left two children, both minors. Upon this state of facts, it is clear that, under no consideration, can the appellant take an estate tail in the land conveyed by the deed to the trustee. After a life estate to the appellant, and another to her husband, in case he survives, then the trustee is to hold the estate "*in trust* to and for the only proper use, benefit, and behoof of such of the children of the said Caroline D. Harris as shall then be living at the time of her decease, and the issue of such children as may then be deceased, their heirs and assigns for ever, in equal shares as tenants in common, so always, however, that such issue of deceased children, if any, shall take equally among them such part and share only as his, or her, or their deceased parent or parents would have taken if living." These words certainly added nothing to the prior life estate of the mother, so as to increase it to a fee tail, but give to those now living who come within their terms, at the least, a contingent interest or estate which may be sold, assigned, or devised. The court, therefore, cannot on the allegation that the appellant has a fee tail in the premises, decree a conveyance to her by the trustee, and entirely ignore the rights of eight individuals now in being, and others who may come into existence before the death of the appellant takes place.

But it is asked, upon the supposition that no legal estate in the two life estates remains in the trustee, that he may be directed to convey to the appellant, in order to enable her to destroy the interests of her own children and grandchildren. The late Chief Justice Gibson, speaking of this doctrine of forfeiture, says, "Now this principle of forfeiture, as affecting other interests than those of the party, is adverse to the habits and feelings of our country, and irreconcilable to the spirit and principles of our civil institutions." "In what light it is viewed by courts of equity we all know, when trustees to support contingent remainders

[Harris *v.* McElroy.]

join in a common recovery, chancery punishes them; and the only reason why that court will not punish a tenant for life, for his own benefit, is, that there being no trust in the case it has no jurisdiction; and the act for that reason alone is left to its legal consequences. It is, however, remarked by Mr. Butler, Co. Litt. 290, b, n. 1, that titles depending on such an act can never be recommended; and the power of tenant for life to destroy contingent remainders being *strictissimi juris*, can never expect favour, or anything beyond mere support. And we are told that a late learned chief justice of the King's Bench, Lord Kenyon, brought a bill into Parliament to remedy this very grievance. After this can we doubt that if even the English common law courts were furnished with a plausible pretext for ridding themselves of the consequences of forfeiture without disturbing titles, they would not gladly lay hold of it?" Lyle *v.* Richards, 9 S. & R. 343, 347.

This appears to have been the deliberate opinion of the English statesmen and jurists, for, by the Act of 8 & 9 Vict. c. 106, an act to amend the law of real property, passed the 4th August 1845, this doctrine was abolished. The 8th section enacts, "that a contingent remainder, existing at any time after the thirty-first day of December, one thousand eight hundred and forty-four, shall be, and if created before the passing of this act, shall be deemed to have been capable of taking effect, notwithstanding the determination by forfeiture, surrender, or merger of any preceding estate of freehold, in the same manner, in all respects, as if such determination had not happened." This court will never give its aid to produce such a destruction of the interests of persons whom the appellant was bound to protect.

But it becomes a matter of some interest to the appellant to hold that the trustee has a subsisting legal estate, or otherwise the partition made is not sufficient to bind all the interests, nor can it be made so under our Act of Assembly. It is certain that he held the legal estate whilst the coverture lasted, and the partition and sales he is intrusted to make can only be valid by so holding. Now, these provisions were intended to avoid the difficulties arising on such points before the contingent estates became vested. It is unnecessary to discuss this matter further.

Decree affirmed at the costs of the appellant.